## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. RAVI SRIVASTAVA, et al., : : : | |
| Plaintiffs, : | Civil Action No. 16-2956 |
| v. : | |
| TRIDENT USA HEALTH SERVICES, LLC, SYMPHONY DIAGNOSTIC SERVICES NO. 1, INC. d/b/a MOBILEXUSA, : : : : | |
| Defendants. : | |

### UNITED STATES' NOTICE OF ELECTION TO INTERVENE

1.      Pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(2) and (4), the United States hereby notifies the Court of its election to intervene for settlement purposes against the defendants, Trident USA Health Services, LLC and Symphony Diagnostics Services, No. 1, Inc. dba MobilexUSA ("Trident"), as to allegations that Trident violated the False Claims Act, 31 U.S.C. § 3729, *et seq*.

2.      The United States, Trident, and Relator Ravi Srivastava have executed a Settlement Agreement that became effective on September 20, 2019.  The Settlement Agreement is attached hereto as Exhibit A.

3.      The Settlement Agreement provides for a release of certain defined covered conduct, a payment of $8,500,000.00 by Trident to the United States, and the dismissal of this action with prejudice pursuant to the terms and conditions of the Settlement Agreement.

1

4.      The Settlement Agreement provides that upon the Settlement Agreement becoming effective Relator Srivastava shall execute and file a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1), and the United States shall consent to such voluntary dismissal pursuant to 31 U.S.C. § 3730(b)(1).

5.      Pursuant to the Court's order dated July 23, 2019, except for the (1) Amended Complaint, (2) the Court's Orders extending the deadlines of the seal and the United States' decision to intervene, (3) the Court's orders for limited disclosures, (4) the Order of July 23, 2019, and (5) all docket filings after July 23, 2019, all docket filings in this matter shall remain under seal.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

JOEL M. SWEET
VERONICA J. FINKELSTEIN
Assistant United States Attorneys

Date:   September 25, 2019

# ATTACHMENT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice, and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, "United States"); Symphony Diagnostic Services No. 1, LLC; American Diagnostics Services, Inc.; Community Mobile Diagnostics, LLC; Community Mobile Ultrasound, LLC; Diagnostic Labs Holdings, LLC; FC Pioneer Holding Company, LLC; JLMD Manager, LLC; Kan-Di-Ki, LLC; Main Street Clinical Laboratory, Inc.; MDX-MDL Holdings, LLC; MetroStat Clinical Laboratory–Austin, Inc.; MX Holdings, LLC; MX USA, LLC; New Trident Holdcorp, Inc.; Rely Radiology Holdings, LLC; Schryver Medical Sales and Marketing, LLC; Trident Clinical Services Holdings, Inc.; Trident Clinical Services Holdings, LLC; Trident Holding Company, LLC; TridentUSA Foot Care Services LLC; TridentUSA Mobile Clinical Services, LLC; TridentUSA Mobile Infusion Services, LLC; and U.S. Lab & Radiology, Inc. (collectively, "Trident"); Relator Ravi Srivastava ("Relator Srivastava"); and Relator Peter Goldman ("Relator Goldman") (Relator Srivastava and Relator Goldman referred to hereafter collectively as "Relators") (the United States, Relators, and Trident, referred to hereafter collectively as the "Parties"), through their respective authorized representatives.

## RECITALS

A.     Trident provides mobile diagnostic services, including mobile x-rays, to individuals residing at a variety of facilities, including skilled nursing facilities (each, a "SNF"). The United States pays money directly to Trident to provide mobile diagnostic services to Medicare and Medicaid participants residing in SNFs.

B.     On June 14, 2016, Relator Srivastava filed a *qui tam* action in the United States

District Court for the Eastern District of Pennsylvania captioned *United States et al. ex rel. Ravi*

*Srivastava v. Trident USA Health Services LLC, Symphony Diagnostic Services No. 1, Inc. dba*

*MobilexUSA*, Civil Action No. 16-2956 (E.D. Pa.), pursuant to the *qui tam* provisions of the

False Claims Act, 31 U.S.C. § 3730(b) (the "Srivastava Action"). In his complaint, Srivastava

alleged that Trident engaged in a swapping scheme by which Trident charged SNFs prices below

Trident's costs to provide mobile x-rays to Medicare Part A recipients in exchange for the SNFs

referring to Trident the SNF's Part B Medicare business. Relator Srivastava alleged that

Trident's conduct violated the False Claims Act, 31 U.S.C. § 3729 *et seq.* through violations of

the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). On or about May 7, 2018, Relator

Srivastava filed an amended complaint, in which he named additional defendants.

C.     On May 3, 2019, Relator Srivastava filed unliquidated, non-priority general

unsecured proofs of claim against Trident in *In re Trident Holding Company, LLC*, Case No. 19-

10384 (S.D.N.Y. Bankr.) (the "Bankruptcy Proceeding") identified as Claims Nos. 201549,

20551, 20553, and 20555) (the "Srivastava Original Proofs of Claim"). On May 8, 2019, Relator

Srivastava filed revised proofs of claim against the Debtors identified as Claim Nos. 641, 642,

643, and 644 (the "Srivastava Revised Proofs of Claim," and, collectively with the Srivastava

Original Proofs of Claim, the "Srivastava Proofs of Claim").

D.     On September 27, 2018, Relator Goldman filed a *qui tam* action in the United

States District Court for the District of Maryland captioned *United States ex rel. Peter Goldman*

*v. Symphony Diagnostic Services No. 1, LLC, d/b/a MobilexUSA*, Civil Action No. 18-cv-02982

(D. Md.), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the

"Goldman Action"). In his complaint, Relator Goldman alleged that Trident engaged in a

swapping scheme substantially similar to the scheme alleged by Relator Srivastava.  The Goldman Action was transferred to the United States District Court of the Eastern District of Pennsylvania and designated Civil Action No. 19-cv-01603 (E.D. Pa.).  On July 23, 2019, Relator Goldman filed an amended complaint adding additional defendants.

E.      On May 3, 2019, Relator Goldman filed two unliquidated, non-priority general unsecured proofs of claim against MobilexUSA in the Bankruptcy Proceeding identified as Claim Nos. 20476 and 20478 (the "Goldman Proofs of Claim" and collectively with the Srivastava Proofs of Claim, the "Proofs of Claim").

F.      Relators each contend that, as a result of the alleged swapping schemes more fully described in the Srivastava Action and the Goldman Action, Trident submitted, or caused to be submitted, false claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"), and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

G.      The United States contends that it has certain civil claims against Trident arising from Trident knowingly and intentionally submitting, or causing to be submitted, to federal healthcare programs claims for the provision of mobile diagnostic services in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.,* based on violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).  The United States' civil claims are based on Relators' allegations, and the United States' subsequent investigation of Relators' allegations, that from June 4, 2006, through September 16, 2019, Trident provided mobile diagnostic services to SNFs at prices below Trident's costs to provide the services, or below fair market value, for the purpose of inducing SNFs to refer federal health program business to Trident.  That conduct is referred to below as the "Covered Conduct."

3

H.      This Agreement is neither a concession by the United States or the Relators that their claims are not well founded, nor an admission of any wrongdoing or liability by Trident. Trident denies all allegations made by Relators in the Srivastava Action and Goldman Action and denies that it engaged in the Covered Conduct.

I.      Relators each claim entitlement under 31 U.S.C. § 3730(d) to a share of the United States' proceeds from this Agreement, and to their reasonable expenses, attorneys' fees and costs.

J.      To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.      Trident shall pay to the United States Treasury a total of Eight Million Five Hundred Thousand Dollars ($8,500,000.00) (the "Settlement Amount"), which constitutes restitution to the United States, no later than five (5) business days after the Effective Date (as defined in Paragraph No. 28, below). Trident's payment shall be made by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of Pennsylvania to Trident on or before the Effective Date

2.      Conditioned upon the United States receiving the Settlement Amount from Trident and as soon as feasible after receipt, the United States shall pay Relator Srivastava a total of Two Million Eighteen Thousand Seven Hundred Fifty Dollars ($2,018,750.00), and Relator Goldman a total of One Hundred Six Thousand Two Hundred Fifty Dollars ($106,250.00), by electronic funds transfer pursuant to written instructions to be provided by Relators' respective counsel to the United States Attorney's Office for the Eastern District of Pennsylvania.

4

3.      Trident shall pay Relators, through their respective counsel, for Relators' expenses, attorneys' fees, and costs, a total of One Million Dollars ($1,000,000.00) ("Attorney Expense Amount"), for the representation of Relator Srivastava and Relator Goldman.  Trident shall pay Berger Montague a total of Nine Hundred Thousand Dollars ($900,000.00), and Morgan & Morgan a total of One Hundred Thousand Dollars ($100,000.00).  Trident's payment of the Attorney Expense Amount shall be made no later than five (5) business days after the Effective Date by electronic funds transfer pursuant to written instructions to be provided by the law firms to Trident on or before the Effective Date.

4.      Subject to the exceptions in Paragraph No. 6 (concerning excluded claims) below, and conditioned upon Trident's full payment of the Settlement Amount and Attorney Expense Amount, the United States releases Trident from any civil or administrative monetary claims arising under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, Subpart I, 0.45(d); and the common law theories of payment by mistake, unjust enrichment, and fraud, related to the Covered Conduct.

5.      Conditioned on Trident's full payment of the Settlement Amount and the Attorney Expense Amount, Relators, for themselves and their heirs, successors, attorneys, agents, and assigns, fully and finally release, waive, and forever discharge Trident (together with its current or former owners, officers, directors, employees, agents, shareholders, and attorneys; and the heirs, representatives, family members, successors and assigns of any of them), and all of the other defendants named in the Srivastava Action and the Goldman Action, from claims for

5

relief, actions, rights, causes of action, suits, debts, obligations, liabilities, demands, losses, damages, costs and expenses of any kind, whether known or unknown as of the Effective Date that Relators have, may have, could have asserted, or may assert in the future on their behalf or on behalf of the United States or any state or local government or sovereign or on behalf of any other person or entity, including but not limited to any claim relating in any way to the Covered Conduct, the allegations in their respective qui tam complaints, any claims for attorneys' fees, costs, or expenses, including under 31 U.S.C. § 3730(d) or any other law of any state or territory that is similar, comparable, or equivalent to 31 U.S.C. § 3730(d), the investigation and prosecution of this matter, or the negotiation of the Agreement, including all liability, claims, demands, actions or causes of action existing as of the Effective Date, fixed or contingent, in law or in equity, in contract or in tort, or under any federal or state statute, regulation, or common law.  Relators represent and warrant that they have not assigned or transferred any of their claims to any person, entity, or thing.

6.      Notwithstanding the releases given in Paragraph Nos. 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability of individuals;

g.      Any liability for express or implied warranty claims or other claims for

defective or deficient products or services, including quality of goods and

services;

h.      Any liability for failure to deliver goods or services due;

i.      Any liability for personal injury or property damage or for other

consequential damages arising from the Covered Conduct.

7.      Relators and their heirs, successors, attorneys, agents, and assigns shall not object

to this Agreement, but rather agree and confirm that this Agreement is fair, adequate, and

reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

8.      Conditioned upon Relators' receipt of the payment described in Paragraph No. 2

and the Attorney Expense Amount described in Paragraph No. 3, Relators and their respective

heirs, successors, attorneys, agents, and assigns, fully and finally release, waive, and forever

discharge the United States, its agencies, officers, agents, employees, and servants, from any

claims arising from the filing of the Srivastava Action or the Goldman Action or under 31 U.S.C.

§ 3730, and from any other claims to a further share of the proceeds of this Agreement.

9.      Conditioned on Trident's full payment of the Settlement Amount and the

Attorney Expense Amount, Trident waives and shall not assert any defenses Trident may have to

any criminal prosecution or administrative action relating to the Covered Conduct that may be

based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth

Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment

of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10.     Conditioned on Trident's full payment of the Settlement Amount and the Attorney Expense Amount, Trident fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Trident has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct, the United States' investigation and prosecution thereof.

11.     Conditioned on Trident's full payment of the Settlement Amount and the Attorney Expense Amount, Trident fully and finally releases Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Trident has asserted, could have asserted, or may assert in the future against the Relators, related to the Covered Conduct, Relators' investigation and prosecution thereof, the Srivastava Action, and the Goldman Action.

12.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier or any state payer), related to the Covered Conduct.  Trident agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

13.     Trident agrees to the following:

a.      <u>Unallowable Costs Defined</u>:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Trident, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     Trident's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payment Trident makes to the United States pursuant to this Agreement and any payments that Trident may make to Relators, including costs and attorneys' fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.      <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by Trident, and Trident shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Trident or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

        c.      Treatment of Unallowable Costs Previously Submitted for Payment:

Trident further agrees that within 90 days of the Effective Date it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Trident or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Trident agrees that the United States, at a minimum, shall be entitled to recoup from Trident any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

      Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Trident or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Trident or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.     Nothing in this Agreement shall constitute a waiver of the rights of the

United States to audit, examine, or re-examine Trident's books and records to determine that no

Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

14.     This Agreement is intended for the benefit of the Parties only, except with respect

to the Relators' release of non-Parties in Paragraph No. 5.  The United States does not release

any claims against any person or entity other than Trident.

15.     Trident agrees that it waives and shall not seek payment for any of the health care

billings covered by this Agreement from any health care beneficiaries or their parents, sponsors,

legally responsible individuals, or third party payors based upon the claims defined as Covered

Conduct.

16.     The Parties warrant that, in evaluating whether to execute this Agreement, they

(a) have intended that the mutual promises, covenants, and obligations set forth constitute a

contemporaneous exchange for new value given to Trident, within the meaning of 11 U.S.C. §

547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact,

constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual

promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a

reasonably equivalent exchange of value that does not and is not intended to hinder, delay, or

defraud any entity to which Trident was or became indebted to on or after the date of this

transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17.     Once the Agreement is fully executed and approved by the Bankruptcy Court

(including the 6004 waiver), Relator Srivastava shall immediately withdraw Relator Srivastava's

objection to Trident's Plan of Reorganization.  Upon receipt of the Settlement Amount and the

Attorney Expense Amount described in Paragraph Nos. 1 and 3 above, Relators shall promptly

sign and file in the Bankruptcy Proceeding papers to, as applicable: (a) dismiss with prejudice the adversary complaints filed by Relators, and (b) withdraw the Proofs of Claim. Upon Trident's payment in full of the Settlement Amount and Attorney Expense Amount described in Paragraph Nos. 1 and 3 above, Trident shall authorize and direct its claims and noticing agent Epiq Corporate Restructuring, LLC, to amend Trident's claims register to expunge the Proofs of Claim. Upon the Effective Date, Relators will sign and file in the Srivastava Action and in the Goldman Action, respectively, Notices of Voluntary Dismissal with Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1), and the United States shall consent to such voluntary dismissals pursuant to 31 U.S.C. § 3730(b)(1).

18.     Upon receipt of the Settlement Amount and the Attorney Expense Amount described in Paragraph Nos. 1 and 3 above, Relator Srivastava will dismiss with prejudice the motion to withdraw the reference filed in the United States District Court for the Southern District of New York.

19.     Except for Trident's obligation to pay the Attorney Expense Amount set forth in Paragraph No. 3, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

21.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is with the United States District Court for the Eastern District of Pennsylvania. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this

12

Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

23.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25.     Upon the Effective Date, this Agreement will be binding upon all of the Parties, their successors, transferees, heirs, and assigns.

26.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

27.     Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

28.     The Effective Date of this Agreement is the day that the last of the following events has occurred: (1) the Agreement has been executed by all Parties and their respective counsel; (2) the Agreement has been approved by the Bankruptcy Court for the Southern District of New York; (3) the effective date of Trident's Chapter 11 Plan has occurred.


### signature pages follow ###


13

## THE UNITED STATES OF AMERICA

DATED: 9-16-19     BY: _____

                                WILLIAM M. McSWAIN
                                United States Attorney

DATED: 9/16/19     BY: _____

                                GREGORY B. DAVID
                                Chief, Civil Division
                                Assistant United States Attorney

DATED: 9/16/19     BY: _____

                                CHARLENE K. FULLMER
                                Deputy Chief, Civil Division
                                Assistant United States Attorney

DATED: 9/16/19     BY: _____

                                JOEL M. SWEET
                                Assistant United States Attorney

DATED: 9/16/19     BY: _____

                                VERONICA J. FINKELSTEIN
                                Assistant United States Attorney

DATED: _____     BY: _____

                                LISA M. RE
                                Assistant Inspector General for Legal Affairs
                                Office of Counsel to the Inspector General
                                Office of Inspector General, United States Department of
                                Health and Human Services
                                *Counsel for the United States of America*

14

## THE UNITED STATES OF AMERICA

DATED: _____     BY: _____
                         WILLIAM M. McSWAIN
                         United States Attorney


DATED: _____     BY: _____
                         GREGORY B. DAVID
                         Chief, Civil Division
                         Assistant United States Attorney


DATED: _____     BY: _____
                         CHARLENE K. FULLMER
                         Deputy Chief, Civil Division
                         Assistant United States Attorney


DATED: _____     BY: _____
                         JOEL M. SWEET
                         Assistant United States Attorney


DATED: _____     BY: _____
                         VERONICA J. FINKELSTEIN
                         Assistant United States Attorney


DATED: 9/17/2019     BY: _____
                         LISA M. RE
                         Assistant Inspector General for Legal Affairs
                         Office of Counsel to the Inspector General
                         Office of Inspector General, United States Department of
                         Health and Human Services
                         *Counsel for the United States of America*


14

**TRIDENT**

DATED: _____     BY: _____
                         ANDREI SORAN
                         Chief Executive Officer, Trident

DATED: _____     BY: _____
                         WILLIAM H. JORDAN
                         JASON D. POPP
                         Alston & Bird LLP
                         *Counsel for Trident*

DATED: _____     BY: _____
                         JAMES J. MAZZA, JR.
                         JUSTIN M. WINERMAN
                         Skadden, Arps, Slate Meagher & Flom LLP
                         *Counsel for Trident*

15

**TRIDENT**

DATED: _____    BY: _____

ANDREI SORAN
Chief Executive Officer, Trident

DATED: 2/16/19    BY: _____

WILLIAM H. JORDAN
JASON D. POPP
Alston & Bird LLP
*Counsel for Trident*

DATED: _____    BY: _____

JAMES J. MAZZA, JR.
JUSTIN M. WINERMAN
Skadden, Arps, Slate Meagher & Flom LLP
*Counsel for Trident*

15

**RELATORS**

DATED: _9·16·2019_  BY: _[signature]_
_____
RAVI SRIVASTAVA
Relator

DATED: _____  BY: _____
SHERRIE R. SAVETT, ESQ.
RUSSELL D. PAUL, ESQ
Berger Montague
*Counsel for Relator Ravi Srivastava*

DATED: _____  BY: _____
MICHAEL S. ETKIN, ESQ.
NICOLE FULFREE, ESQ.
Lowenstein Sandler
*Counsel for Relator Ravi Srivastava*

DATED: _____  BY: _____
PETER GOLDMAN
Relator

DATED: _____  BY: _____
JAMES YOUNG, ESQ.
Morgan & Morgan Complex
Litigation Group LLC
*Counsel for Relator Peter Goldman*

DATED: _____  BY: _____
U. SETH OTTENSOSER, ESQ.
Keller Lenkner
*Counsel for Relator Peter Goldman*

16

**RELATORS**

DATED: _____     BY: _____
                        RAVI SRIVASTAVA
                        Relator

DATED: _____     BY: _____
                        SHERRIE R. SAVETT, ESQ.
                        RUSSELL D. PAUL, ESQ
                        Berger Montague
                        *Counsel for Relator Ravi Srivastava*

DATED: 9/16/19     BY: _____
                        MICHAEL S. ETKIN, ESQ.
                        NICOLE FULFREE, ESQ.
                        Lowenstein Sandler
                        *Counsel for Relator Ravi Srivastava*


DATED: _____     BY: _____
                        PETER GOLDMAN
                        Relator

DATED: _____     BY: _____
                        JAMES YOUNG, ESQ.
                        Morgan & Morgan Complex
                        Litigation Group LLC
                        *Counsel for Relator Peter Goldman*

DATED: 9/16/19     BY: _____
                        U. SETH OTTENSOSER, ESQ.
                        Keller Lenkner
                        *Counsel for Relator Peter Goldman*

16

## **RELATORS**

DATED: _____   BY: _____

RAVI SRIVASTAVA
Relator

DATED: _____   BY: _____

SHERRIE R. SAVETT, ESQ.
RUSSELL D. PAUL, ESQ
Berger Montague
*Counsel for Relator Ravi Srivastava*

DATED:             BY: _____

MICHAEL S. ETKIN, ESQ.
NICOLE FULFREE, ESQ.
Lowenstein Sandler
*Counsel for Relator Ravi Srivastava*

DATED: _9-16-19_   BY: _____

PETER GOLDMAN
Relator

DATED: _____   BY: _____

JAMES YOUNG, ESQ.
Morgan & Morgan Complex
Litigation Group LLC
*Counsel for Relator Peter Goldman*

DATED: _____   BY: _____

U. SETH OTTENSOSER, ESQ.
Keller Lenkner
*Counsel for Relator Peter Goldman*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Election to Intervene and all

accompanying papers were served by ECF and first-class mail, postage prepaid, this

25th day of September, 2019 on:

Sherrie R. Savett, Esquire
Russell D. Paul, Esquire
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103


Veronica ʒ
VERONICA J. FINKELSTEIN
Assistant United States Attorney